HEIRS OF STEPHEN HENDERSON *v.* ROST & MONTGOMERY, Executors.

For former decisions as to the construction of the same will, see 12 Rob. 549 ; 5 An. 441 ; 7 A. 692. In this case the court determined to abide by every thing decided in the above recited cases, as having settled the law for the parties to this suit.

At the death of the testator the slaves, which he directed by his will to be emancipated, acquired instanter the condition of *statu liberi*, and every child of a woman who had been his slave followed the condition of its mother, and became free when she became free. Such child would be free at the time fixed for the emancipation of its mother, even had she died before that time. C. C. Art. 196.

Under the terms of the testator's will, and the above recited decisions of the Supreme Court, these *statu liberi* would become free at the expiration of the time designated by the testator without any formal manumission, but upon the express condition that, upon their refusal to go to Liberia at the time fixed for their emancipation, or upon their return after having gone thither, they should forfeit to the heirs of the testator the disposition of his will, and become slaves again.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Briggs,* for plaintiff and appellant. *P. Soulé,* for defendant.

BUCHANAN, J. The will of *Stephen Henderson* has been the subject of several decisions of this court. See 12 Rob. 549 ; 5 An. 441 ; 7 An. 692.

The only matter which is supposed to still require adjudication in relation to this testament is the validity and effect of its 6th, 7th and 8th articles.

The whole will is copied in a note to page 458 of the 5th volume of the Annual Reports, to which we refer for the details of the articles of the will in question. They treat of the management of the testator's slaves after his death ; his intention being evident, that his slaves should be kept together, and worked according to a sort of socialist scheme of his own upon one of his plantations, which was to remain, in perpetuity, a part of his succession. In the theory of the will, this socialist community of blacks, thus established in the midst of our slave population, was divided into two classes : one of which was composed of all the testator's slaves in existence at the time of his death, of certain other slaves in which he had an undivided half interest, (the other half being owned by *Henry Doyal,*) and of all children born of the testator's slaves within five years after his death.

The second class was composed of the children and descendants of the testator's slaves, to be born after the expiration of five years from the date of his death.

As to the first of these two classes, the will provided for its gradual conditional emancipation in the following manner : Five years after the testator's death, ten slaves, five females and five males, were to be selected by lot, and furnished with a free passage to Liberia, and one hundred dollars in money, provided they were willing to go to that country. At the end of ten years, twenty others were to be drawn and sent off in like manner. At the end of twenty-five years from the testator's death, all the survivors of the slaves born before his death, and all their descendants born within five years after his death, being the whole of the first class remaining in the hands of his representatives, were to be sent off to Liberia, provided they would consent to go.

As to the second class, they were to remain forever attached to the Destrehan plantation, or Dunblane, as a part of the socialist community of that projected industrial emporium.

We are spared, by the labors of our predecessors, the decision of some very important questions in relation to the emancipation of *Henderson's* slaves, which would have offered great difficulty in their solution, and upon which, we are free to confess that, we doubt whether we should have come to the the the same conclusion as they have done had the points been of first impressions. But we have determined to abide by everything that has been said by our predecessors in this particular case, considering their decisions as having settled the law for these parties. Thus, Judge Martin, as the organ of the court, in 12 Rob. 451, says: "The draft and transportation, as ordered by the testator, were legitimate objects of his last will and testament."

Under this dictum, we consider the legality of the dispositions of the will in relation to the drawing of lots at the expiration of five and ten years, and the transportation to Liberia of the successful competitors, as no longer an open question.

Again, in 5th Annual, 468, we read: "And it is further decreed, that the provision in the said will contained, touching the liberation of the slaves attached to the Houmas plantation, if they should hereafter be decreed valid, can only operate upon such portions of said slaves as may, on a proceeding in the nature of a judicial partition in kind, fall to the succession of *Stephen Henderson*, the testator, and not upon the portion of said *Doyal.*" We take it to be here settled, that the projected emancipation of all the slaves in which the testator had an undivided half interest, is to be construed (upon the principle *ut res magis valeat quam pereat*) into an emancipation of those slaves only, which, upon a partition with the other co-proprietor, should enure, in full and undivided ownership to *Henderson's* succession.

Considering these points as settled, which, as already observed, would have offered great difficulties to our minds had we felt ourself called upon to decide them, we now proceed to deal with the status of the slaves of *Henderson* under the very peculiar dispositions of his will. And at the threshhold we are met by the principle of law *le mort saisit le vif.* The moment the breath left *Mr. Henderson's* body, he ceased to be owner of everything which it had been the labor of his life to accumulate, his slaves included. By last will, he could enfranchise his slaves, either absolutely or *sub modo.* It was his pleasure to do so *sub modo.* At the moment of his death, therefore, the condition of his slaves were fixed. They were *statu liberi*—the females were *statu libera.* Every child born after the death of *Henderson,* of a woman who had been his slave, and who, consequently, was an object of his testamentary dispositions, followed the condition of its mother. It became free when its mother became free. And by the humane dispositions of our law, such child would become free at the time fixed for the enfranchisement of the mother, even if the mother should die before that time. C. C., Art. 196.

We are next to examine what were the conditions annexed by *Henderson* to the enfranchisement of his slaves. · By the terms of his will, as construed by us and by our predecessors, the *statu liberi* were all to be free at the expiration of twenty-five years from the testator's death. But they were only to be free on condition of going to Liberia with their own consent. Let them refuse to go to Liberia, and they remain slaves. And it is to be remarked that the testator has declared his will to be, that they return to slavery, if ever they return back to this country. Upon this clause Judge Martin seems to have based his conclusion (12 Rob. 552,) that the provisions of the will render a formal manumission of these slaves

unnecessary. In fact, a formal emancipation of the slaves would, perhaps, have rendered their subsequent reduction to slavery, in case of their return from Liberia, impracticable, as the law stood at the date of the will. Whereas, the simple transportation of the slaves, with the express condition that they were not to return, while it would ensure to them the possession of their liberty in a country where slavery did not exist, would in no manner deprive the owner of the right of reclaiming their services, if they should violate the condition upon which alone he had consented to dispense with his legitimate claim to those services.

It is, therefore, adjudged and decreed, that all the slaves of which the late *Stephen Henderson* was the undivided proprietor at the time of his death, and all those of whom he was co-proprietor, by undivided halves, with *Henry Doyal*, and which, by partition in kind with said *Doyal*, have fallen or may fall, in an undivided ownership, to the succession of *Henderson*, shall be sent to Liberia by the executors of *Henderson*, at the expiration of twenty-five years from said *Henderson's* death, and at the costs of his estate, provided they consent to go. But if any of said slaves should refuse to go to Liberia, at the expiration of the term aforesaid, and upon the conditions in the will specified, then the slave so refusing shall be deemed as having forfeited all claim to this disposition of *Stephen Henderson's* will; and it is further decreed, that the transportation of any of said slaves to Liberia, as aforesaid, shall not bar the heirs of *Stephen Henderson* from claiming the said slaves as their property, in case he or she shall thereafter be found within the limits of the State of Louisiana. It is further decreed, that the costs in both courts be paid by the succession.

*C. Dufour* applied for a re-hearing, which was refused.